UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------X
ROTHROCK & ASSOCIATES FINANCIAL,
INC., d/b/a ROTHROCK & ASSOCIATES,          <u>MEMORANDUM AND ORDER</u>
                                            05-CV-5701(DRH)(ARL)
                    Plaintiff,

            -against-

JORDAN DREW, DAVID MARCUS, ALL
QUOTES INSURANCE, INC. and CYBER
FINANCIAL NETWORK, INC.,

                    Defendants.
--------------------------------X
A P P E A R A N C E S:

For Plaintiff:
      Rottenberg Lipman Rich, P.C.
      369 Lexington Avenue
      Fifteenth Floor
      New York, New York 10017
        By: Harry W. Lipman, Esq.

For Defendants:
      Jaspan Schlesinger Hoffman LLP
      300 Garden City Plaza
      Garden City, New York 11530
        By: Scott B. Fisher, Esq.
            Steven L. Ukeiley, Esq.

HURLEY, District Judge

<u>ISSUE BEFORE COURT</u>

        The purpose of this decision is to determine whether

the paragraph entitled "WHAT COMPANY AGREES TO DO" in the

"STANDARD CONDITIONS FOR THE ZIP CODE LOCK IN AGREEMENT" is clear

on its face as a matter of law.  If it is, extrinsic evidence is

not needed and, indeed, is inadmissible for purposes of altering

its unambiguous meaning.  <u>Alexander & Alexander Servs., Inc. v.</u>

<u>These Certain Underwriters at Lloyd's, London, England</u>, 136 F.3d

82, 86 (2d Cir. 1998).  Conversely, if the contractual term is

ambiguous,[1] then such evidence is admissible "to ascertain the meaning intended by the parties during the formation of the contract."  Id.

### RELEVANT PORTIONS OF CONTRACT
### Regarding Meaning of "WHAT COMPANY AGREES TO DO"

The portions of the "STANDARD CONDITIONS FOR THE ZIP CODE LOCK IN AGREEMENT" which appear to be particularly germane for present purposes are the following:

[1] WHEREAS,  All Quotes Insurance, Inc. (hereinafter referred to as "Company") is engaged in the computer software and development business, and has established a website entitled All Quotes Insurance.com (the "Website").  The Website enables consumers to input data concerning their insurance requirements, and to review various insurance related products and services. Licensed insurance companies subscribe to this service to receive consumer data via various transmission methods from Company;

[2] WHEREAS, VIRGINIA ROTHROCK of ROTHROCK & ASSOCIATES (hereinafter referred to as "Client") desires to employ the services of Company to make available to Client certain data obtained from consumers via the Website on the terms and conditions described in this

---

[1]  As explained by the Second Circuit in Lightfoot v. Union Carbide Corp.:

> Contract terms are considered ambiguous if they are "capable of more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement and who is cognizant of the customs, practices, usages and terminology as generally understood in the particular trade or business."

110 F.3d 898, 906 (2d Cir. 1997)(quoting Nowak v. Ironworkers Local 6 Pension Fund, 81 F.3d 1182, 1192 (2d Cir. 1996)).

Agreement ("Zip Code Lock-In Agreement"); and

[3] <u>WHEREAS</u>, Client is in the business of providing insurance related products and services to consumers and wishes to subscribe to the data gathering and transmission services of Company from the Website. . . . <u>NOW THEREFORE</u>, in consideration of the premises and the respective representations, warranties and mutual covenants set forth herein, the parties agree as follows:

[4] <u>WHAT COMPANY AGREES TO DO</u>: Company agrees to (a) not deliver, sell or transfer information derived from consumers residing within the zip code(s) and category(ies) referred to herein as subscribed to by Client to anyone other than Client as outlined in this Agreement. . . .

* * * *

[5] <u>TRANSMISSION OF CONSUMER DATA</u>: After the input of data by consumers, Company, via e-mail, or other means will notify Client when data has been submitted that meets Client's requirements. Client, in order to receive the information, shall log on to a secure website (www.allquotesinsurance.com/members) that is password-protected to retrieve the data. Each retrieval of data is referred to herein as a "Data Transmission." All data is transmitted through a Secure Socket Layer (SSL) network to ensure maximum security.

(Dec. 7, 2005 Lipman Decl., Ex. B.)

POSITIONS OF PARTIES

During the January 25, 2006 pre-hearing oral argument on plaintiff's motion for a preliminary injunction, defendants argued that movant would be unable to establish irreparable harm in the absence of injunctive relief because (a) the diversion of consumer leads was due to a computer glitch and (b) that glitch was remedied some time ago.

In response to plaintiff's insistence that the
diversions have not ceased but rather are ongoing, defendants
fault plaintiff's documentary evidence.  By way of example,
defendants cite Exhibit J attached to the Reply Affidavit of
Virginia Rothrock, entitled "Chart of Known Diverted Leads."
Defendants maintain that the monthly and continuing totals of
supposedly diverted leads therein depicted are inaccurate
because, in many instances, the consumer inquiry information was
not derived from All Quotes Insurance.com, i.e. the "Website"
identified in the parties' contract.  Instead, according to
defendants, such information was derived from consumers who
contacted another website controlled by defendant Cyber Financial
Network, Inc.[2]  Thus, as to each of the three allegedly diverted
leads listed for January 2006 in Exhibit J, defendants proffer,
the consumer involved contacted "Mortgage Expo.com."  After the
consumer provided information bearing on his interest in
obtaining a mortgage, Mortgage Expo then asked whether he was
also in the market for home owners insurance.  If that query
prompted an affirmative answer, the consumer was requested by
Mortgage Expo to complete a questionnaire detailing that
interest.  Once completed, that questionnaire was forwarded by
Mortgage Expo to All Quotes Insurance, Inc.

In defendants' view, the consumer leads referenced

---

[2]  Although the caption includes numerous defendants, the
sole parties to the contract are plaintiff and the defendant All
Quotes Insurance, Inc.

-4-

above are not subject to the parties' agreement given that the leads were derived from Mortgage Expo.com. Accordingly, the argument continues, the total for January 2006 should read zero, not three, thereby demonstrating that the conduct plaintiff seeks to enjoin is no longer extant.

Plaintiff counters by focusing on the language in "WHAT COMPANY AGREES TO DO" # [4], <u>supra</u>, which obligates the defendant to "not . . . transfer information derived from consumers residing within the zip code(s)" purchased by plaintiff to another during the contract period. The means by which All Quotes Insurance, Inc. obtained the information is said to be irrelevant.

DISCUSSION

Plaintiff's reading of the agreement is myopic. Paragraph # [4] cannot legitimately be read in isolation. It must be considered in conjunction with, inter alia, paragraphs [1] (defining "the Website" as "All Quotes Insurance.com") and [2] (explaining that plaintiff "desires [to purchase] certain data obtained from consumers via the Website."). So viewed, it is clear, as a matter of law, that the type of consumer leads that All Quotes Insurance, Inc. may not transfer to anyone other than plaintiff is limited to information it acquired from its own Website. Of course, why the consumer accessed the site is irrelevant. It makes no difference whether consumer contacts came about through random browsing, or based on the recommendation of another individual, or of an entity such as

Mortgage Expo.com.  As long as the subject information was obtained by defendants via All Quotes Insurance.com, plaintiff was exclusively entitled to its use.  If, on the other hand, the information came into All Quotes Insurance, Inc.'s possession from another source, the situation is otherwise.

Although the meaning of the contract language is clear (thereby precluding the introduction of extrinsic evidence to modify or contradict its plain meaning), the manner by which All Quotes Insurance Inc. received the information is unclear.  Did consumers directly access the website, or was the consumer information taken by a third party, e.g., Mortgage Expo, which, in turn, forwarded it to All Quotes Insurance Inc. as proffered

by defendants during oral argument?  Defendants are directed to produce an individual competent to answer that question at the hearing scheduled for Monday, January 30, 2006.

SO ORDERED.

Dated: January 27, 2006
       Central Islip, New York


_____/S/_____
DENIS R. HURLEY, U.S.D.J.